UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHANIE O'DRISCOLL, individually and as
representative of a class of participants and
beneficiaries on behalf of the Plexus Corp. 401(k)
Retirement Plan,

        Plaintiff,

        v.                                                   Case No. 20-C-1065

PLEXUS CORP., et al.,

        Defendants.

# DECISION AND ORDER

        Plaintiff Stephanie O'Driscoll, a participant in the Plexus Corp. 401(k) Retirement Plan (the Plan), brings this case as a proposed class action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(2), against Defendants Plexus Corp., the Board of Directors of Plexus Corp., and John Does 1–30. Defendants filed a motion to dismiss Plaintiff's amended complaint on October 30, 2020. On September 30, 2021, the Court stayed and administratively closed the case pending the United States Supreme Court's decision in *Hughes v. Northwestern University*, No. 19-1401. The Supreme Court issued a decision in *Hughes* on January 24, 2022. 142 S. Ct. 737 (2022). That same day, the Court lifted the stay and invited the parties to submit simultaneous supplemental briefing in light of the Supreme Court's decision. The parties submitted supplemental briefs on February 7, 2022. The motion to dismiss is now ready for decision. For the following reasons, Defendants' motion to dismiss will be granted.

## LEGAL STANDARD

        A motion to dismiss "tests the sufficiency of the complaint" to state a claim upon which relief can be granted. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012);

*see also* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* Instead, a claim must be plausible to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT

In approximately November 2019, Plaintiff commenced employment with Plexus as a paralegal. Am. Compl. ¶ 12, Dkt. No. 16. Plaintiff's employment with Plexus ended approximately eight months later on July 2, 2020. *Id.* ¶ 13. Plexus is the plan sponsor and plan administrator of the Plexus Corp. 401(k) and Retirement Plan. *Id.* ¶ 21. Plexus acted through its officers, including the Board Defendants, and their members to perform plan-related fiduciary functions in the course and scope of their business. *Id.* ¶ 23. The Plan is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A). *Id.* ¶ 26. A defined contribution plan allows employees to make pre-tax elective deferrals through payroll deductions to an individual account under a plan. *Id.* ¶ 36. The Plan has about $419,000,000 in assets and 4,487 participants. *Id.* ¶¶ 27–28.

Plaintiff alleges that, at all relevant times, the Plan's fees were excessive when compared with other comparable 401(k) Plans offered by other sponsors that had similar numbers of plan participants, and similar amounts of money under management. She alleges that the excessive fees led to lower net returns than returns participants in comparable 401(k) Plans enjoyed. *Id.* ¶ 68. Plaintiff claims that, during the putative Class Period, which is defined as July 15, 2014, through the date of judgment, Defendants breached their fiduciary duties owed to the Plan, to Plaintiff, and to other plan participants by (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories; and (3) failing to monitor the recordkeeping and administration fees paid by the Plan to ensure that they were reasonable and, as a result, authorizing the Plan to pay objectively unreasonable and excessive recordkeeping and administration fees, relative to the recordkeeping and administration services received. *Id.* ¶ 69. Defendants' recordkeepers during the Class Period were Mass Mutual Retirement Services from 2014 through 2018 and T. Rowe Price RPS Inc. from 2018 to 2020. *Id.* ¶ 82. Mass Mutual and T. Rowe Price are "well-known providers" of recordkeeping and administration services. *Id.*

Plaintiff alleges that Defendants failed to regularly monitor the Plan's recordkeeping and administration fees paid to covered service providers, including Mass Mutual and T. Rowe Price. *Id.* ¶ 90. She asserts that Defendants waited at least four years, from 2014 to 2018, to replace Mass Mutual, which had been charging objectively unreasonable fees for recordkeeping and administration services, and that Defendants should have replaced Mass Mutual earlier in the Class Period as a recordkeeper when it became clear that Defendants were paying objectively unreasonable fees for recordkeeping and administration services. *Id.* ¶ 92. She alleges that from

3

2018 to 2020, T. Rowe Price also charged objectively unreasonable recordkeeping and administration fees, should have never been selected to replace Mass Mutual, and should have been replaced once it became clear it was charging objectively unreasonable fees for recordkeeping and administration services. *Id.* Plaintiff claims that Defendants failed to regularly solicit quotes and/or competitive bids from covered service providers, including Mass Mutual and T. Rowe Price, to avoid paying unreasonable fees for recordkeeping and administration services and failed to ensure that the Plan paid no more than a competitive reasonable fee for recordkeeping and administration services. *Id.* ¶¶ 93–94. She claims that the Plan's recordkeeping and administration fees were significantly higher than they would have been had Defendants engaged in these processes. *Id.* ¶¶ 98–100. Plaintiff alleges that, from the years 2014 through 2018, the Plan had, on average, 4,244 participants and paid an average effective annual recordkeeping and administration fee of at least approximately $453,478, which equates to an average of at least approximately $107 per participant. *Id.* ¶ 101. She claims that, for the same time period, the annual recordkeeping and administration fees paid by other plans of similar sizes with similar amounts of money under management ranged from $33 to $73 per participant. *Id.* ¶ 102. Plaintiff alleges that, because Defendants did not act in the best interests of the Plan, the Plan cost its participants a total minimum amount of approximately $1,248,784 in unreasonable and excessive recordkeeping and administration fees. *Id.* ¶ 109.

In addition, Plaintiff alleges that, during the Class Period, Defendants did not use share classes that provided the greatest benefit to plan participants and in some cases even switched from one share class to a different share class that charged a higher "net investment expense to retirement plans." *Id.* ¶ 133. Plaintiff claims that Defendants chose an investment option that effectively charges a fee that is 23% higher than an alternative investment option that provides the identical services of the same portfolio manager. *Id.* ¶ 137. Plaintiff also alleges that the

4

investment options selected by the plan fiduciaries were 438% more expensive than prudent alternative and less expensive options covering the same asset category. *Id.* ¶ 174. Plaintiff claims Defendants did not make a specific and informed finding, as part of a prudent investment selection process, that the probability that the active portfolio manager will outperform the index warrants the higher fees charged by the active portfolio manager and the risk/reward tradeoffs show that the potential of outperformance is in the best interest of the plan participants. *Id.* ¶ 178. She alleges that, had Defendants acted in the best interests of the Plan's participants, Defendants would have selected funds with lower "net investment expense to retirement plans" than those funds actually selected by Defendants. *Id.* ¶ 182. Plaintiff claims that, during the Class Period, she had no knowledge of Defendants' process for selecting and regularly monitoring investments to ensure that the investments remained prudent selections, the recordkeeping and administration fee structure, or the revenue sharing rates associated with the investments selected by Defendants. *Id.* ¶¶ 184–85. She alleges that, had Defendants chosen other investment options, the Plan's participants would have received virtually identical portfolio management services at a lower cost. *Id.* ¶ 187. Plaintiff claims that both the expense ratios and the "net investment expense to retirement plans" of the Plan's investment options between the years 2014 and 2020 were more expensive by significant multiples of comparable passively managed and actively managed alternative funds in the same investment style. *Id.* ¶ 189. She asserts that, because Defendants failed to act in the best interests of the Plan's participants by engaging in an objectively reasonable investigation process when selecting its investments, Defendants caused objectively unreasonable and unnecessary losses to Plaintiff and the Plan's participants in the amount of approximately $5,480,064 through 2018. *Id.* ¶ 192.

Plaintiff also claims that Defendants failed to properly disclose fees charged to participants in the Plan in their quarterly statements and participant fee disclosure documents. *Id.* ¶ 198. She

5

alleges, upon information and belief, that Defendants failed to disclose the revenue sharing rates of each investment option of the participants. *Id.* ¶ 201. Plaintiff asserts that, as a result, the plan participants were prevented from making informed decisions with regard to the management of their individual accounts. *Id.* ¶ 204.

Plaintiff asserts four claims for relief: breaches of duties of loyalty and prudence regarding recordkeeping and administration fees (Count I); breaches of duties of loyalty and prudence regarding investment management fees (Count II); failure to adequately monitor other fiduciaries regarding recordkeeping and administration fees (Count III); and failure to adequately monitor other fiduciaries regarding investment management fees (Count IV).

## ANALYSIS

### A. Article III Standing

Defendants assert that Plaintiff lacks Article III standing for virtually all of her claims. Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies" brought by litigants who demonstrate standing. *Garcia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1063 (7th Cir. 2021). "The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement." *Id.* at 1064 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103–04 (1998)). To have standing to bring these claims, Plaintiff must show three things: (1) she suffered an "injury in fact"; (2) the injury is "fairly traceable" to the fiduciaries' challenged conduct; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff bears the burden of establishing each element and at the pleading stage must clearly allege facts demonstrating each element. *Id.* (citation omitted). "There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). Therefore, a

6

Case 1:20-cv-01065-WCG   Filed 08/23/22   Page 6 of 12   Document 37

plaintiff who raises multiple claims "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Relying on the Supreme Court's decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), Defendants argue that Plaintiff lacks standing to assert claims that Defendants violated their fiduciary duties to plan participants by paying excessive fees for recordkeeping and administrative services and by offering imprudent investment options. In *Thole*, the plaintiffs, who were participants in a defined-benefit plan, filed a putative class action alleging the defendants breached their duties of loyalty and prudence by mismanaging the plan and poorly investing the plan's assets. *Id.* at 1618. The Supreme Court held that the plaintiffs lacked Article III standing to maintain their suit because, as defined-benefit participants, the plaintiffs had been paid "all of their monthly benefit payments" and were "legally and contractually entitled to receive those same monthly payments for the rest of their lives." *Id.* The Court explained that the plaintiffs did not show that they had a "concrete stake" in the lawsuit because, win or lose, the plaintiffs "would still receive the exact same monthly benefits that they [were] already slated to receive." *Id.* Plaintiff asserts that *Thole* does not apply to the facts here because the Plan in this case is a defined contribution plan, not a defined benefit plan. But Defendants cite *Thole* to support their contention that Plaintiff lacks standing to challenge investment decisions that did not harm her, a principle that applies to both defined contribution and defined benefit plans.

Plaintiff asserts that Defendants breached their fiduciary duties by causing the Plan to pay excessive recordkeeping fees. Plaintiff has not established standing on her recordkeeping claims related to Mass Mutual, which was the Plan's recordkeeper from 2014 to 2018. In 2018, the Plan switched recordkeepers to T. Rowe Price. *Id.* ¶¶ 82, 92. Plaintiff became a plan participant in November 2019. Because she did not pay recordkeeping fees to Mass Mutual, she did not suffer any particularized injury to her plan account. A plaintiff cannot challenge an investment decision

7

that did not affect her personally. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). In short, Plaintiff lacks standing for her breach of fiduciary duty claims related to Mass Mutual.

Plaintiff also does not have standing on her recordkeeping claim related to T. Rowe Price. She claims that Defendants did not regularly solicit competitive bids to ensure that the fees paid were reasonable, despite the Plan's size and the alleged ease of which to do so, and as a result, Defendants caused plan participants to pay unreasonable recordkeeping and administration fees. Am. Compl. ¶ 109. Plaintiff asserts that, in 2018, the annual recordkeeping and administration fees paid by other similarly sized plans with similar amounts of money under management ranged from $33 to $73. *Id.* ¶¶ 103–04. She alleges, based on this information, that a prudent plan fiduciary would have paid on average an effective annual recordkeeping and administration fee of approximately $48 per participant. *Id.* ¶ 105. Although Plaintiff admits that she does not know the particulars of Defendants' process for administering the Plan, she asserts that her allegations that Defendants failed to regularly solicit quotes or competitive bids from covered service providers allow for the plausible inference of a flawed process and imprudence.

Plaintiff has not alleged that she suffered any concrete injury-in-fact. During her eight-month employment at Plexus, Plaintiff invested her retirement assets in only one fund in the Plan's lineup, the T. Rowe Price Retirement Trust 2050-F. T. Rowe Price charged at most a flat annual recordkeeping and administration fee of $38. Dkt. Nos. 22-11 at 3 & 22-12 at 3. Although Plaintiff asserts that the Court should focus only on the fiduciary's process in arriving at an investment decision, rather than the outcome or result, the outcome is relevant to whether Plaintiff suffered a harm. Plaintiff asserts that she has "Article III standing to bring this action on behalf of the Plan because she suffered an actual injury to her own Plan account in which she is still a Participant,

that injury is fairly traceable to Defendants' unlawful conduct, and the harm is likely to be redressed by a favorable judgment." Am. Compl. ¶ 14. But Plaintiff has not and cannot show that she suffered a loss, since the recordkeeping and administrative fee was $10 less than what she suggests is a reasonable recordkeeping and administration fee, and she has not alleged that the investment option she chose was otherwise unreasonable. Because the complaint contains no allegations that she was harmed by Defendants' investment decisions and Plaintiff has not demonstrated that she was injured, she lacks standing to pursue her recordkeeping claim.

Plaintiff also alleges that Defendants breached their fiduciary duty by failing to retain low-cost share classes of eleven mutual funds, when such share classes were offered to other investors. *Id.* ¶¶ 127–66. Again, Plaintiff only invested in the T. Rowe Price Retirement Trust 2050-F and did not invest in any of the eleven mutual funds. Therefore, Plaintiff lacks standing to pursue a breach of fiduciary duty claim on this basis. *See DaimlerChrylser Corp.*, 547 U.S. at 352 (plaintiff who raises multiple claims "must demonstrate standing for each claim he seeks to press").

Plaintiff further alleges that Defendants breached their fiduciary duty by retaining high-cost actively managed investments. Am. Compl. ¶ 189. She alleges that Defendants did not use share classes that provided the greatest benefit to plan participants and in some cases even switched from one share class to a different share class that charged a higher "net investment expense to retirement plans." *Id.* ¶ 133. Plaintiff claims that both the expense ratios and the "net investment expense to retirement plans" of the Plan's investment options between the years 2014 and 2020 were more expensive by significant multiples when compared to comparable, passively managed and actively managed alternative funds in the same investment style. *Id.* ¶ 189. Plaintiff cites to comparative tables to suggest that Defendants engaged in an imprudent process when selecting certain investments. She asserts that, while the difference in cost alone does not create a cause of action, it does raise an inference that Defendants engaged in an imprudent process when selecting

9

those investments by failing to consider materially similar and less expensive alternatives. *Id.* ¶¶ 170, 191.

Plaintiff has failed to establish her own injury in fact, however. Again, during her eight-month employ at Plexus, Plaintiff only invested her retirement assets in the T. Rowe Price Retirement Trust 2050-F. While the expense ratio for the T. Rowe Price Retirement Trust 2050-F is 0.28% higher than the prudent alternative Plaintiff proposes, the Vanguard Target Retirement 2050 Inv, *id.* ¶ 170, her T. Rowe Price trust investment outperformed Plaintiff's proposed prudent alternative. *See* Dkt. No. 10 at 17. As a result, Plaintiff has neither shown that she suffered a loss nor alleged that the investment option was otherwise unreasonable. Because the complaint contains no allegations that she was harmed by Defendants' investment decisions and Plaintiff has not demonstrated that she was injured, she lacks standing to pursue her share class claim.

**B. Breach of Fiduciary Duty**

Plaintiff claims that Defendants breached their fiduciary duties by failing to disclose revenue-sharing information to participants. A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). To state a claim for breach of fiduciary duty under ERISA, "the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). "In order to assess the prudence of the fiduciary's actions, they must be evaluated in terms of both procedural regularity and substantive reasonableness." *Id.* (citing *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014)).

10

Plaintiff alleges, upon information and belief, that Defendants failed to disclose revenue sharing information to plan participants. Am. Compl. ¶ 201. Plaintiff asserts that, as a result, plan participants were prevented from making informed decisions with regard to the management of their individual accounts. *Id.* ¶ 204. But the Seventh Circuit has recognized that fiduciaries are not required to disclose "information about the revenue-sharing arrangement." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Indeed, all that matters is the total fee amount, not how those fees are allocated and distributed. *Id.* Although Plaintiff asserts that "citations to *Hecker* for disclosure purposes are both outdated and completely irrelevant," Pl.'s Br. at 30, *Hecker* remains the law of this circuit which, of course, is binding on this Court. In short, Defendants are not required to disclose fees charged or credited to the Plan investments with the level of detail sought by Plaintiff.

## C. Remaining Claims

Plaintiff asserts that Defendants breached ERISA's duty of loyalty, which requires fiduciaries to act solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104(a)(1). Plaintiff's breach of the duty of loyalty claim is based on the same allegations as the breach of fiduciary duty claim. Plaintiffs must do more than recast allegations of purported breaches of fiduciary duty as disloyal acts. *See Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *6 (N.D. Ill. July 1, 2020) (collecting cases). The Amended Complaint does not contain any allegations beyond those pertaining to an alleged breach of fiduciary duty; therefore, Plaintiff's breach of the duty of loyalty claims must be dismissed.

Plaintiff also alleges that Defendants breached their duty to monitor. Plaintiff's breach of the duty to monitor claim is derivative of the breach of fiduciary duty claim. Because Plaintiff has failed to state a breach of fiduciary duty claim, she has also failed to state a breach of the duty to monitor claim.

11

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. No. 21) is **GRANTED**. The amended complaint fails to state a claim upon which relief can be granted and will be dismissed for that reason pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court may dismiss a case with prejudice when there is no doubt that there exists no set of facts from which a plaintiff can prove she is entitled to relief. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Plaintiff has already amended her complaint once and has not requested leave to do so again in the face of the motion to dismiss. Therefore, this case is **DISMISSED with prejudice**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 22nd day of August, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge